# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 23-21068-CR-ALTONAGA

**UNITED STATES OF AMERICA,**

Plaintiff,

**vs.**

**REGINALD LOUIS CHOSSON,**

Defendant,
_____/

## DEFENDANT REGINALD LOUIS CHOSSON'S SENTENCING MEMORANDUM AND REQUEST FOR ALTERNATIVE SENTENCE

Defendant, **REGINALD LOUIS CHOSSON ((Reggie"),** through undersigned counsel respectfully submits this Sentencing Memorandum and Request for an Alternative Sentence and as grounds therefore, states:

### INTRODUCTION

**REGINALD LOUIS CHOSSON**, known best by his family and friends as **"Reggie"** is a 29-year-old young man, a citizen of Haiti who emigrated to the United States in 2010 and is a permanent U.S.

1

resident. He has no prior criminal history, quickly acknowledged and accepted responsibility for his unlawful conduct and is genuinely remorseful for his severe lack of prudent judgment in this offense. His primary hope is that this case does not define the otherwise outstanding young man that Reggie is and intends to demonstrate to everyone in the future.

## FACTUAL BACKGROUND TO CONSIDER

On or about July 12, 2022, Homeland Security Investigations ("HSI") initiated a criminal investigation based upon information received from Customs and Border Protection regarding the discovery of twenty-three (23) firearms along with various ammunition concealed in a cargo shipment bound for Haiti from Miami. During the investigation it was determined that three (3) of the twenty-three (23) firearms discovered were purchased by this Defendant, **REGINALD LOUIS CHOSSON**. On August 3, 2022, **Reggie** was contacted by and subsequently interviewed by HSI Special Agents S. Mason and G. Menocal regarding the three (3) firearms he had purchased. **Reggie** fully cooperated with the investigators and

provided useful information which ultimately led to the arrest of co-Defendant **JOSEPH JULES PLANCHER ("PLANCHER")**.

On April 24, 2024, the Government filed the subject Indictment against **REGINALD CHOSSON** and **SAMUEL PIERRE ("PIERRE")** followed by the subsequent arrest of **Reggie** on May 9, 2024. On August 13, 2024, a Superseding Indictment was filed which now included co-defendant, **JOSEPH JULES PLANCHER.**

On December 10, 2024, **Reggie** entered a plea of guilty to the Indictment.[1] **PIERRE** subsequently plead guilty as well. However, the third and *by far most culpable* defendant, **JOSPEH JULES PLANCHER ("LANCHER")**, maintained his Not Guilty plea and elected to proceed to trial. In preparation for **PLANCHER's** trial, the assigned AUSAs requested that **Reggie** consider being debriefed by them in anticipation of potentially being called as a government witness against **PLANCHER**. **Reggie** then voluntarily appeared at the U.S. Attorneys' Office with undesigned counsel on two (2) separate occasions, and based upon these debriefings, the

---

[1] Undersigned counsel has recently noticed that the Plea Agreement executed in this case by **REGINALD CHOSSON** appears to correspond to the <u>original</u> Indictment and was never interlineated to address the Superseding Indictment. Undersigned does not recall if this was covered at the change of plea hearing.

3

Government subpoenaed and intended to call him as a witness in **PLANCHER'S** trial. Once the trial began, **Reggie** was asked and appeared at the courthouse for two (2) days waiting to be called to testify by the Government in their case-in-chief.

Based upon undersigned's understanding of what transpired during the trial proceedings, a mistrial was declared due to a significant discovery violation by the Government first realized during the trial.[2] Although **Reggie** was present and ready, willing and able to testify at **PLANCHER'S** trial, based upon the mistrial, **Reggie** was no longer needed and was then excused from his trial subpoena.

Despite no assurances or guarantees being made by the Government in advance of trial, **Reggie** was certainly hopeful that his continued cooperation since the inception of the underlying investigation as well as throughout the court proceedings would lead to the Government filing a §5k1.1 or subsequent Rule 35 for the substantial assistance he provided to the Government.

---

[2] The Court then conducted a hearing to advise both **CHOSSON** and **PIERRE** of the circumstances that led to the Court declaring a mistrial. Each was then provided with an opportunity to notify the Court if either defendant intended to file a motion to withdraw their previously entered guilty pleas based upon what had transpired. Neither defendant elected to do so.

The Government now takes the position that since **Reggie's** substantial assistance did not lead to a conviction of **PLANCHER** that **Reggie** is not entitled and therefore will not receive any benefit for all his recognized cooperation. Essentially, the Government has chosen to totally disregard the substantial assistance **Reggie** provided to them due to circumstances that were completely out of **Reggie's** control.

Notwithstanding the disparity in sentencing by similarly situated defendants in other recently resolved cases within the Southern District of Florida, the incredible disparity in potential disposition/sentencing within <u>this case</u> between **PLANCER** and **CHOSSON** is incomprehensible and unprecedented. How is it even remotely equitable that **REGINALD CHOSSON**, a minor participant/straw buyer of three (3) firearms, who had no knowledge or participation in the packaging, planning, coordination and shipment for export of twenty-three (23) firearms along with large quantities of ammunition be facing such significant sentencing exposure while the principal culprit just walks away? We respectfully submit that to incarcerate **REGINALD CHOSSON** would be a classic miscarriage of justice.

5

It is important to note that **REGINALD CHOSSON** was approached and interviewed by HSI agents approximately twenty (20) months before his indictment. However, he was not aware of or informed about the possibility of negotiating a pre-indictment resolution or coordinating a surrender before being unexpectedly arrested over a year and a half later. The mere fact that the Government decided to charge **Reggie** with conspiracy to commit "smuggling" of firearms under 18 U.S.C. §544 knowing full well that his participation in the alleged conspiracy was very limited demonstrates the inherent inequity of these charges.[3]

It is rather myopic for the Government to now assert that the conspiracy could not have progressed without **Reggie's** involvement.[4] To insinuate that the smuggling operation [of three of the guns] would not have occurred but not for **Reggie** purchasing those three (3) guns for **PIERRE** and then delivering them to

---

[3] It is respectfully submitted that U.S.S.G. §2K2.1(6) correctly encompasses the true nature of **CHOSSON'S** involvement as opposed to §2M5.2(a)(1) as suggested by probation and the Government.

[4] See Government's Response to Defendant's Objections to PSR [DE #134], page two, where the Government states *that "Without the Defendant's participation, the firearms could never have been delivered for export. His role initiated the entire transaction, and the scheme to ship those three firearms would have failed absent his involvement."*

6

**PLANCHER** is genuinely misleading. Especially where there were twenty (20) other firearms that were exported without **Reggie's** knowledge or participation and the overall smuggling scheme would still have occurred. Furthermore, the fact that **Reggie** admitted in his factual proffer to knowing these three (3) weapons were earmarked for Haiti does not presuppose that he was aware, nor was there any evidence that he knew they would be *illegally* shipped (smuggled). Also of note is that **Reggie** did not sell and/or deliver these guns to a "prohibited person;" just that he admittedly failed to disclose that he was purchasing the firearms for someone else which formed the sole basis of his actual involvement in this case.

## 18 U.S.C. § 3553 FACTORS

Pursuant to *U.S. v. Booker*, 543 U.S. 220 (2005), the federal sentencing process has adopted a three-step approach. (See Fed. R. Crim. P. 11(M), amended December 1, 2007, and Amendment 741 of the Sentencing Guidelines, effective November 1, 2010.) First, the Court is to determine the *advisory* guideline range then fashion a reasonable sentence that is sufficient, but not greater than necessary,

Additionally, the Court is to consider if there are any factors that may warrant a departure from the *advisory* guideline range. As

before *United States v. Booker,* 543 U.S. 220 (2005), the court is to depart when it is warranted under the facts and circumstances of a particular case. "The application of the guidelines is not complete until the departures, if any, that are warranted are appropriately considered," *United States v. Jordi,* 418 F. 3d 1212, 1215 (11th Cir. 2005). The PSR fails to identify any factors that may warrant a downward departure from the *advisory* guideline range. Although the defendant believes such factors do exist. Counsel asks this Court to consider them as sentencing factors under 18 USC § 3553(a). Contained in defense counsel's filed Objections to PSR [DE 131] is a requested "minor role" (or even a minimal role) reduction pursuant to § 3B1.2(b). In opposition thereto, the Government filed a "Response to Defendant's Objections to Presentence Report" [DE 134]. Nevertheless, it is important that this Court understand and appreciate the significantly different level of involvement between **REGINALD CHOSSON** and **JOSEPH JULES PLANCHER** in the charged offenses.

Lastly, the Court is to consider all of the sentencing factors of 18 USC § 3553(a) and impose a sentence which is "reasonable" and not greater than necessary to achieve the sentencing objectives set

forth in 18 USC § 3553(a). As set forth more fully below, the defendant, through counsel, believes there are factors worthy of this Court's consideration.[5]

**SENTENCING SUBMISSION AND REQUEST FOR ALTERNATIVE SENTENCE**

The PSR suggests a total offense level of **23**, and as a first-time offender, the *advisory* guideline range is **46-57** months subject to objections filed on behalf of Defendant [DE 131].

Notwithstanding the above, this Court is fully aware the guidelines have been *advisory* since 2005, *United States v. Booker,* 543 U.S. 220 (2005), followed by *Gall v. United States,* 128 S. Ct. 586, and *Kimbrough v. United States,* 128 S. Ct. 558, both decided on December 10, 2007. *United States v. McBride,* 511 F. 3D 1293 (11TH Cir. 2007), made clear that district courts are only required to give "some weight" to the advisory guidelines, as they are to the other 18 USC §3553 factors. To that end, the defendant, through counsel, offers the following:

---

[5] "The parties are free to argue for sentencing variances per 18 U.S.C. § 3553(a)."

9

### A. Personal Factors and Defendant's Explanation of his role in the Offense

**Reggie** is a 29-year-old single young man and an only child who is very close with his parents. He has never been in trouble with the law prior to this instance. Last year, he started his own business, Luxe Auto LLC, located in Miami buying and selling used cars. **Reggie** has been working extremely hard to build this business and any profits generated are poured back into his company.

As previously stated, **Reggie's** sole involvement in this instance was falsely purchasing and then reselling three (3) guns to **PIERRE** who was then instructed by **PIERRE** to deliver them to **PLANCHER**. Although **Reggie** admitted that he was cognizant these specific guns would end up in Haiti, he was never made aware of any illegal transport, nor did he participate in such a scheme. Furthermore, he had no way of knowing that **PLANCHER** intended to illegally export these guns along with a much larger quantity of firearms and ammunition to Haiti. There was no reason for **Reggie** to be included in this exportation scheme since he was merely an isolated "straw buyer" of three (3) firearms.

10

Undersigned is separately filing as a supplement to this pleading numerous letters from friends and loved ones expressing **Reggie's** exceptional and outstanding character.  However, counsel feels compelled to insert here the letter submitted by his mother, Marie Joseph, who knows **Reggie** better than anyone and strongly believes in the unique qualities he possesses.

> February 24, 2025
>
> Dear Honorable Judge Cecilia Altonaga,
>
> I am writing this letter as a heartfelt character reference for my son, Reginald Chosson, as he appears before you. As his mother, I have had the privilege of raising and knowing him as a kind, caring, and hardworking young man who has always put others before himself. He has a deep sense of compassion and responsibility, and he truly values the people in his life.
>
> Reginald Chosson has always been someone who looks out for others. Whether it's supporting his friends and family in times of need or simply being there for those who require a helping hand, he demonstrates genuine kindness in his daily life. He is also a dedicated and hardworking individual who takes pride in putting in the effort needed to achieve his goals and provide for those

around him.

I acknowledge that he has made a mistake, and he fully understands the seriousness of his actions. However, I can say with complete confidence that he has learned a valuable lesson from this experience and is deeply remorseful. He has expressed to me, time and time again, how much he regrets what happened and how he is committed to making better choices moving forward. He understands the consequences of his actions and has assured me that he will not repeat the same mistake.

.

I sincerely believe that this situation does not define the person he is, nor the person he will become. He is determined to grow from this and to prove himself as the kind, responsible, and hardworking individual that I know him to be. I respectfully ask for your understanding and consideration in recognizing the good in my son and the potential he must continue down a positive path.

Thank you for taking the time to read this letter. I truly appreciate your time and consideration.

Sincerely,
**Marie Joseph,**
(786) 622-3642

### B. The Need to Avoid Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct

Notwithstanding the potential disposition disparity previously addressed between defendants in this case, within the Southern District, there have been several instances where similarly situated defendants who improperly purchased firearms by means of a false statement for export out of the United States who were not indicted under 18 U.S.C. §544. Particularly, those charged by Information having had the opportunity to retain counsel and negotiate or charge bargain prior to arrest based upon their cooperation or their advanced agreement to plead guilty.

One example is *United States v. Allen John Collier*, USDFL Case No. 24-60049-LIEBOWITZ, **Collier** was charged by Information with six (6) counts of False Statements During a Firearms Purchase in violation of 18 U.S.C. §922(a)(6). Interestingly, the Criminal Complaint filed by the Special Agent from ATF asserted that **Collier** falsely purchased seven (7) of the eight (8) firearms that were intercepted and seized in transit from Miami to Jamaica hidden in a speaker box. Despite these similar circumstances, **Collier** was never formally charged with exportation and was ultimately sentenced to

13

by Judge Liebowitz to **one year of probation**.

In another recent local case, *United States v. Amanda Roden*, 24-20165-CR-RUIZ, **Roden** was permitted to plead to one count of smuggling goods (three firearms) from the United States to the Dominican Republic in violation of 18 U.S.C. §554. This, despite her three count Indictment which included Purchasing of Firearms by Means of a False Statement and Delivery of a Firearm to a Common Carrier Without Written Notification in violation of 18 U.S.C. §922(a)(6) and §922€ respectively.  The major distinguishing factor is that **Roden** *orchestrated* the smuggling of firearms unlike **REGINALD CHOSSON** who did not participate in the exportation**.** What is comparable is that one of the grounds proposed by her counsel for a downward variance at sentencing was the substantial assistance she provided to the Government and where the Government declined to file a §5K1.1.  **Roden** was sentenced by Judge Ruiz to a year and a day followed by three years of supervised release, a distinct variance from the advisory sentencing guidelines.

There are various examples of other cases in this district where defendants received probationary/supervised release sentences for their involvement as "straw buyers" of firearms. Undersigned

14

respectfully believes that 18 U.S.C. §922(a)(6) was the only appropriate charge **REGINALD CHOSSON** should have been held accountable for but not for the Government's decision to charge him with conspiracy, which we submit smacks of "piling on." That decision and the Government's unwillingness to dismiss that count during plea negotiations or after is heavy handed at the very least. *See: United States v. Jacoby Karmen Smith*, 24-60035-CR-ROSENBERG, where Judge Rosenberg sentenced **Smith** to CTS and three years supervised release involving four (4) firearms purchased in violation of §922(a)(6). *Also: United States v. Nathaniel Christian Guillaume,* where this Honorable Court sentenced **Guillaume** to CTS and three years' supervised release.

As previously stated, **Reggie** readily admitted his involvement and accepted responsibility for his actions. Whether or not the Court favorably considers a reduced role reduction pursuant to U.S.S.G. § 3B1.2(b), the disproportionate roles between **REGINALD CHOSSON** and **PLANCHER** genuinely merit serious consideration. When contemplating whether a disparity in sentences exists, "a well-founded claim of disparity, however, assumes that **"apples are being compared to apples." (emphasis added)** (See *United States v.*

15

*Mateo-Espejo*, 426 F.3d 508, (1st Cir. 205), cited within *United States v. Docampo*, 573 F.3d 1091 (11th Cir. 2009) at 1101).

## CONCLUSION

The defendant is aware that in fashioning a "reasonable" but not greater than necessary sentence in his case, this Court must consider the nature and circumstances of the offense, 18 USC § 3553(a)(1). By his very early cooperation he quickly accepted responsibility for his involvement in this offense, signed a written Plea Agreement and Factual Proffer, and pled guilty. He has admitted he committed the charged offense during the time and to the extent referenced in the Factual Proffer executed and submitted in this case. With that said, he has done all he could to quickly resolve his criminal liability in this case and he remains profoundly remorseful.

Subsequent to *Booker,* this Court must also consider the history and characteristics of the defendant, 18 USC § 3553(a)(1), except for the period identified in this offense, **Reggie** had led a law-abiding life. As a result of accepting responsibility and pleading guilty to committing the offense charges herein, he will remain a convicted felon for the remainder of his life. **Reggie's** punishment in this case will have a far-reaching impact on his life beyond any punishment

imposed by this Court. With that said, we ask this Court to consider a reasonable term of probation, or in the alternative, a combination of community confinement or house arrest followed by an appropriate period of supervised release.

**WHEREFORE**, Defendant, **REGINALD LOUIS CHOSSON,** prays that this Honorable Court favorably consider this Sentencing Memorandum and Request for an Alternative Sentence and deviate below the advisory guidelines to a sentence commensurate with the § 3553(a) factors set forth herein.

Respectfully submitted,

LAW OFFICES OF PETER S. HELLER, PA
Counsel for Defendant **CHOSSON**
9100 South Dadeland Boulevard
Suite 1702
Miami, Florida 33156
Tel. (305) 284-8000
Fax: (305) 670-0088
Email: Petersheller@aol.com

By: /s/ *Peter S. Heller*
Peter S. Heller, Esq. (Fl. Bar No. 402222)

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 1, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and served all parties and counsel of record.

*/s/ Peter S. Heller*
